UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| WILLIAM S. ROBERTS,<br><br>Plaintiff,<br><br>v.<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>Defendant. | Civil No.   12-cv-1085-L (DHB)<br><br>**ORDER RESOLVING JOINT MOTION TO DETERMINE DISCOVERY DISPUTE**<br><br>**[ECF No. 29]** |
|---|---|

On April 2, 2013, the parties filed a joint motion for determination of two discovery disputes that the parties have been unable to resolve despite their meet and confer efforts. (ECF No. 29.) First, the parties disagree whether Defendant The Prudential Insurance Company of America ("Prudential") "is entitled to a protective order with regard to (1) portions of its 2009 training manual and (2) the amounts it paid to its third party vendors." (*Id.* at 2:20-22.) Second, the parties disagree whether Plaintiff William Roberts ("Plaintiff") is entitled to receive supplemental responses from Prudential in response to Plaintiff's Interrogatory Nos. 13 and 14. (*Id.* at 3:1-2.)

After a thorough review of the parties' arguments and evidence, and for the reasons set forth below, the Court issues the following Order to resolve the issues in dispute.

## I. BACKGROUND

Plaintiff, a former litigation partner at the law firm of Wilson, Elser, Moskowitz, Edelman, & Decker, LLP ("Wilson Elser"), brings this action against Prudential under the

Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"). Plaintiff alleges that Prudential was the designated claims administrator for a long term disability plan offered by Wilson Elser in which Plaintiff participated. Plaintiff further alleges that, beginning on or about October 7, 2008, he was unable to continue working in his capacity as senior litigator, trial counsel and equity partner due to illness. Specifically, Plaintiff alleges that he was diagnosed by his doctors with fibromyalgia, severe osteoarthritis and depression.

In January 2009, Plaintiff applied for disability benefits under the plan administered by Prudential. During the claims review process, Plaintiff's medical records were reviewed by Dr. Paul Howard of MLS Peer Review Services. Dr. Howard confirmed the fibromyalgia diagnosis but concluded that there was no objective evidence that Plaintiff had difficulty thinking or concentrating such that he could be considered "functionally impaired." Prudential ultimately denied Plaintiff's disability claim based in part on the conclusions of Dr. Howard. Plaintiff now seeks a judicial determination that he is entitled to disability benefits under the plan.[1]

## II. DISCUSSION

**A.    Protective Order**

As noted above, the parties' first dispute concerns whether Prudential is entitled to a protective order with respect to the production of portions of its 2009 training manual and the amounts paid to its third party vendors. (*Id.* at 2:20-22.) Prudential has agreed to produce this information to Plaintiff upon the Court's issuance of an appropriate protective order, but Plaintiff contends that the information should not be subject to a protective order. (*Id.* at 2:22-24, 3:10-12.) "The issue Plaintiff is requesting this court to determine is whether the items sought . . . are confidential, proprietary, and/or sensitive business, personnel, and/or commercial information, and/or trade secrets, and whether prejudice or harm will result to Prudential if produced without a protective order." (*Id.* at 3:13-17.)

---

[1] Although Plaintiff's complaint contains additional lengthy and detailed allegations not summarized here, the Court believes that this brief summary of Plaintiff's claims is sufficient for purposes of resolving the instant discovery disputes.

Federal Rule of Civil Procedure 26 provides, in pertinent part, that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery . . . [and] forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery into certain matters." FED. R. CIV. P. 26(c)(1)(A), (D).  The Court may, for good cause, also issue a protective order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." FED. R. CIV. P. 26(c)(1)(G).  The Court must limit discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C)(iii). With respect to electronically stored information:

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

FED. R. CIV. P. 26(b)(2)(B).

"The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 378 (C.D. Cal. 2009) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *Sullivan v. Prudential Ins. Co. of Am.*, 233 F.R.D. 573, 575 (C.D. Cal. 2005)).

"ERISA discovery should generally be limited to information relevant to 'the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record.'" *Duran*, 258 F.R.D. at 380 (quoting *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965 (9th Cir. 2006) (en banc)) (citing *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942,

949-50 (9th Cir. 2007) ("Because an ERISA plaintiff may be permitted to supplement the administrative record with evidence of a conflict of interest on the part of the defendant, [citation omitted], we agree with [plaintiff] that *some* discovery aimed at demonstrating a conflict of interest may have been appropriate."). Discovery regarding the proper standard of review to be applied is also proper. *See id.* (citing *Klund v. High Tech. Solutions, Inc.*, 417 F. Supp. 2d 1155, 1159-60 (S.D. Cal. 2005); *Medford v. Metro. Life Ins. Co.*, 244 F. Supp. 2d 1120, 1129 (D. Nev. 2003)).

### 1. Training Manual

In response to Plaintiff's Request for Production Nos. 4, 6 and 7, Prudential has agreed to produce portions of its 2009 training manual known as the Disability Management Services Systems Reference Guide, subject to the Court's entry of an appropriate protective order. (ECF No. 29 at 3:4-4:1.) Prudential contends that the information contained in the training manual is confidential and proprietary. (*Id.* at 12:16-18.) Prudential cites to several non-binding cases in which "courts have found that an insurer's training materials constitute confidential and proprietary information, as well as trade secrets, and warrant entry of a protective order prior to disclosure during litigation." (*Id.* at 13:3-16 (citing *Takata v. Hartford Comprehensive Emp. Benefit Serv. Co.*, 283 F.R.D. 617, 621-22 (E.D. Wash. 2012); *Dine v. Metro. Life Ins. Co.*, 255 F.R.D. 534, 534-37 (C.D. Cal. 2009); *Cohen v. Metro. Life Ins. Co.*, 2003 U.S. Dist. LEXIS 4468 (S.D.N.Y. 2003); *Adams v. Allstate Ins. Co.*, 189 F.R.D. 331 (E.D. Pa. 1999).) Prudential also contends a protective order is appropriate where the information "is actively kept confidential and the disclosure of which would harm a party's competitive advantage." (*Id.* at 13:16-18 (citing *Takata*, 283 F.R.D. at 621-22).)

In support of its contentions, Prudential submits a declaration from its employee Tamika Williams, Team Lead, Appeals & Litigation. (ECF No. 29-2.) The Williams declaration establishes (1) Prudential considers its training manual to be confidential in that it contains confidential business practices; (2) Prudential seeks to ensure the confidentiality of its training manual by utilizing a password protected system and restricting its availability

to claims associates who might refer to it in the course of their duties; (3) Prudential never provides its training manual or portions thereof to anyone outside of Prudential during the course of handling a claim, and requests by claimants for disclosure of the manual are denied; (4) the training manual has been developed and maintained at a significant cost, and it includes proprietary business practices which create a competitive advantage from which Prudential benefits economically; and (5) disclosure of the training manual absent a protective order would negatively impact Prudential's competitive advantage. (*Id.* at ¶¶ 3-5.) Based thereon, the Court finds that Prudential has satisfied its burden of justifying the issuance of a protective order with respect to its training manual.

Plaintiff argues that Prudential's training manual should not be protected because it does not contain legitimate trade secrets or documents of a similar commercial nature, and that Prudential cannot meet its burden of demonstrating that the information is confidential or that Prudential will suffer harm if the training manual is produced absent a protective order. (ECF No. 29 at 8:18-9:7, 10:7-11:10.) However, an insurer's training materials have been considered confidential in ERISA cases. *See, e.g.*, *Duran*, 258 F.R.D. at 382-83 (finding that "worksheets, guidelines and policies used to determine plaintiff's benefits and offsets" constitute confidential commercial information and should be produced upon entry of a protective order). Moreover, the Court finds Prudential's evidence in the form of the Williams declaration to be more persuasive that Plaintiff's unsupported contention that Prudential has voluntarily disclosed the training manual in other instances without marking it as confidential and without requiring a protective order.

Moreover, Plaintiff's argument that a protective order would impede public access to court proceedings (ECF No. 29 at 8:3-9) is unavailing. "Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984). Indeed, the public policy reasons supporting a strong presumption in favor of public access to materials gathered during

discovery only begin to apply once those materials are filed with the court. *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1134-35 (9th Cir. 2003). Here, the issuance of a protective order does not necessarily imply that documents subsequently *filed* with the Court should be protected from public disclosure. Indeed, if either party seeks to file those portions of Prudential's training manual marked "confidential," that party will need to seek approval from the Court to file the document under seal. The Court's conclusion that a protective order is appropriate goes to the discoverability of the documents, not the ultimate decision of whether the documents should be filed under seal. To the extent Prudential's proposed protective order implies otherwise, the parties shall meet and confer on the terms of the protective order prior to submitting a joint motion for entry of a protective order.

Plaintiff also argues that Prudential cannot meet its burden of establishing that a protective order is warranted. (ECF No. 29 at 9:8-10:6.) The Court disagrees. Prudential has demonstrated that disclosure of its training manual absent a protective order would negatively impact its competitive advantage by allowing other insurers to freely gain access to the information. (ECF No. 29-2 at ¶ 5.) Moreover, Plaintiff's reliance on *Perez v. Cozen & O'Connor Grp. Long Term Disability Coverage*, 2006 U.S. Dist. LEXIS 90356 (S.D. Cal. Dec. 13, 2006), is misleading. The opinion cited by Plaintiff was a decision by Judge Dana M. Sabraw, and not by Judge Anthony J. Battaglia as stated by Plaintiff. Moreover, the opinion cited by Plaintiff has nothing to do with the production of Prudential's claims manual, despite Plaintiff's statement that the court ordered its production and denied Prudential's request for protective order. Rather, the opinion contains Judge Sabraw's findings of fact and conclusions of law, and does not involve a discovery dispute. Moreover, the Court has been unable, despite its efforts, to locate the opinion apparently cited by Plaintiff. Of particular note, the Court reviewed the docket in the *Perez* matter due to the fact that Judge Battaglia was the magistrate judge assigned to that case. However, the only order on the docket from Judge Battaglia regarding a discovery dispute in that case does not support Plaintiff's argument. In that order, dated, November 23, 2005, Judge Battaglia found that the plaintiff's requests for "all written guidance and procedures on the handling of group

long term disability claims" was "overly broad and burdensome and beyond the scope necessary to conduct an adequate de novo review of the benefit decision in this case." Judge Battaglia *granted* Prudential's motion for protective order as to this discovery request and ordered that Prudential need not respond. Thus, the Court is troubled by Plaintiff's claim that the *Perez* decision resulted in an order requiring production of the claims manual and denying the defendant's request for a protective order.

Finally, Plaintiff argues that it refused to sign Prudential's proposed protective order because doing so would amount to a concession that the requested documents constitute confidential information. (ECF No. 29 at 11:13-12:6.) Although this argument does not alter the Court's conclusion that a protective order is appropriate, the Court notes that Prudential's proposed protective order contains language that is problematic and that would not be entered in its current form. Specifically, the Court is concerned that the proposed language would require Plaintiff to agree or concede that the requested documents are confidential prior to even receiving the documents from Prudential. The protective order should allow for a party to designate material as confidential if it has a good faith belief to do so, but it must also allow for the other party to challenge that designation. Prudential's proposed language does not allow for Plaintiff to challenge the designation of the training manual as confidential. The parties are instructed to meet and confer on the terms of the protective order prior to submitting a joint motion for entry of a protective order.

### 2.    **Third Party Vendor Payments**

The parties also disagree as to whether Prudential is entitled to a protective order prior to disclosing to Plaintiff the amounts Prudential paid to its third party vendors. (ECF No. 29 at 14:18-19.) Prudential has agreed to produce this information subject to the Court's entry of an appropriate protective order. (*Id.* at 14:19-22.) Plaintiff's argument against a protective order focuses solely on the discoverability of the information. (*Id.* at 18:3-15.) However, discoverability is not the issue, especially since Prudential has agreed to produce the information. Plaintiff fails to address why a protective order is inappropriate other than to argue that Prudential is required to establish good cause. (*Id.* at 17:27-18:2.) Here, the

Court believes Prudential has established good cause under Federal Rule of Civil Procedure 26(c)(1)(G) for a protective order regarding the amounts it paid to third party vendors. (*Id.* at 18:17-28.)

**B.     Supplemental Responses**

Finally, the parties disagree as to whether Plaintiff is entitled to supplemental responses to Interrogatory Nos. 13 and 14.

Request No. 13 states: "Please state the number of files by year from 2006 through 2009 that PRUDENTIAL has referred to Paul Howard, M.D.[,] in which the disability claimed was fibromyalgia." (ECF No. 29 at 19:6-9.)  In response, Prudential asserted various objections as well as the following response: "Prudential has no responsive information to this Interrogatory because no compilation of the requested information exists. Moreover, Prudential did not refer any files directly to Dr. Paul Howard between 2006 and 2009. Any such referrals would have occurred through an independent, third-party vendor." (*Id.* at 19:10-25.)

Request Nos. 14 states: "Please state the number of files by year from 2006 through 2009 that PRUDENTIAL has referred to Paul Howard, M.D.[,] in which the disability claimed was fibromyalgia and in which Dr. Howard's opinion supported a finding of disability." (*Id.* at 19:26-20:2.) In response, Prudential asserted various objections, the same response set forth in response to Interrogatory No. 13, as well as the following additional response: "Further, Prudential does not ask the independent physicians retained through independent, third-party vendors to opine on whether a claimant is disabled. Instead, it asks for an opinion as to the claimant's functional capacity." (*Id.* at 20:3-21.)

In arguing that it should not be required to provide supplemental responses to Interrogatory Nos. 13 and 14, Prudential relies on *Dilley v. Metro. Life Ins. Co.*, 256 F.R.D. 643 (N.D. Cal. 2009).  In that case, the insurer and plan administrator, MetLife, disclosed in discovery various statistics for a specified three year period, including the total number of claims submitted to MetLife; the number of claims approved and paid; the number of claims that were never paid; and the total number of claims referred to the Network Medical

Review Company Ltd. ("NMR"), a collection of independent physicians and specialists. *Id.* at 645. The plaintiff had also sought the number of claims denied by MetLife, in whole or in part, based on the medical records review performed by NMR. *Id.* at 644. However, the court found that, beyond the statistical information already provided by MetLife:

> MetLife established that the remaining information sought by plaintiff could not be extracted without substantial difficulty and expense, because MetLife has no ability to query its electronic database in a manner that would capture such information. In particular, MetLife has no ability to determine, from its database, whether a report received from an independent physician consultant through a referral to NMR provided a basis for the denial or termination of a claim.

*Id.* at 645.

The court concluded "that because of the relative inaccessibility of the information sought by plaintiff . . . responding to the request would be overly burdensome." *Id.* The court further determined:

> the statistical information sought by plaintiff would not show that MetLife's conflict impacted its decision to deny plaintiff's claims. Details of the number of claims denied based on a medical records review by NMR would be meaningless unless a finding could be made that MetLife had wrongly denied those claims. Because none of those cases are before the court, the court is not in a position to make such a finding.

*Id.* The court ultimately determined "that the significance of the discovery to the issues in the present case is substantially outweighed by the burden on MetLife were it compelled to respond." *Id.* Thus, the court granted MetLife's motion for protective order. *Id.*

Here, Plaintiff seeks essentially the same type of information as the plaintiff in *Dilley*. Similarly, too, Prudential has established that the additional information sought by Plaintiff cannot be extracted from its database without substantial difficulty. (*See* ECF No. 29-2 at ¶ 6.) It is true that in *Dilley* the number of claims referred by MetLife to NMR exceeded 9,000, much more than the 263 claims referred by Prudential to Dr. Howard in the instant case. However, the Court nevertheless finds that Prudential need not provide further responses to Interrogatory Nos. 13 and 14. Citing the Ninth Circuit's decision in *Abatie*, Plaintiff argues that the information is relevant to the "nature, extent, and effect" of Prudential's structural or inherent conflict of interest. (ECF No. 29 at 21:6-23:8.) However,

as discussed above, this argument was rejected in *Dilley*. 256 F.R.D. at 645. The total number of claims for fibromyalgia referred by Prudential to Dr. Howard, and the number of those claims in which Prudential denied benefits based on Dr. Howard's opinion, are "meaningless unless a finding could be made that [Prudential] had wrongly denied those claims. Because none of those cases are before the court, the court is not in a position to make such a finding." *Id.*

Accordingly, the Court finds that the significance of the additional information sought by Plaintiff in response to Interrogatory Nos. 13 and 14 is substantially outweighed by the burden Prudential would undergo if it were compelled to provide supplemental responses. Plaintiff's motion to compel further responses to Interrogatory Nos. 13 and 14 is therefore **DENIED**.

### III.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED:

1. Prudential's motion for protective order is **GRANTED**. Prudential is entitled to the issuance of a protective order prior to disclosing portions of its 2009 training manual or information related to the amounts paid to its third party vendors. The parties shall meet and confer no later than **April 19, 2013** concerning the contents of a proposed protective order. The parties shall file a joint motion for entry of a protective order no later than **April 26, 2013**. If the parties are unable to entirely agree on the proposed language they shall set forth any remaining disputes in their joint motion.

2. Plaintiff's motion to compel supplemental responses to Interrogatory Nos. 13 and 14 is **DENIED**.

**IT IS SO ORDERED.**

DATED: April 9, 2013

DAVID H. BARTICK
United States Magistrate Judge